PEAY v. GASAV OF PROVO, Inc., et al.

No. 5218.   Decided January 11, 1935.   (39 P. [2d] 1041.)

Rehearing granted March 9, 1935.

Reargued April 8, 1935.

Appeal dismissed December 10, 1935.

*Robinson & Robinson,* of Provo for appellants.

*M. M. Larsen,* of Provo, for respondent.

STRAUP, Chief Justice.

This case involves a controversy between the parties growing out of a written contract whereby the plaintiff and respondent agreed to sell described real estate in Provo City

to the defendant and appellant, "Gasav of Provo, Inc.," a corporation. Judgment went for the plaintiff, from which the defendants, the corporation and its officers who were made parties, appeal.

The complaint is in two counts or causes of action. In the first it in substance is alleged that on October 30, 1929, an agreement in writing was entered into between the plaintiff and the corporation by the terms of which the plaintiff agreed to sell to it described real estate in Provo City for the sum of $12,000, payable in installments of $100 a month; that contemporaneously therewith the plaintiff was to execute a warranty deed to the property to be delivered with the contract in escrow at a bank in Provo City, the deed to be delivered to the corporation when all payments had been made in accordance with the written agreement; that the defendants on or about February 10, 1930, "acting jointly and collectively, exercised a privilege of taking the title to said property in advance of the time provided in said contract, and obtained from the plaintiff the deed to the aforesaid property, agreeing to pay the plaintiff the balance due as plaintiff's equity in said property upon the delivery of the deed thereto. That the plaintiff delivered the deed to said premises to the defendant, Heber Rupper, at the request of all the defendants and upon their agreement to pay to plaintiff the purchase price of said property." It further is alleged that the defendants have not paid the purchase price nor any part thereof except the sum of $300, and that there was due and owing and unpaid from the defendants to the plaintiff the sum of $11,700 with interest.

The same matters with respect to the contract and its terms are alleged in the second cause of action, with the additional allegations that on or about December 7, 1929, "the defendants, acting and conspiring together to cheat and defraud the plaintiff of his said property, obtained from the plaintiff the deed to the property above described, under a guise, pretense, and promise to deposit said deed

in escrow" at the bank designated in the agreement, and "that in fraud of the plaintiff and in derogation of his rights, the defendants thus conspiring and acting together, failed, neglected, and refused to deposit said deed in escrow, but on the other hand, willfully, deliberately, and fraudulenty and in derogation of plaintiff's rights, and for the purpose of perpetrating fraud upon the plaintiff and cheating the plaintiff and depriving him of his property, caused said deed to be recorded," and thereby to vest title to the property in the defendant corporation; that thereafter and on or about March 28, 1930, the defendant corporation conveyed the real estate to the other named defendants, officers and directors of the corporation, and caused such deed also to be recorded. It further is alleged that the defendants had not paid plaintiff for the property and were not entitled to the ownership thereof, or to the legal title thereto; that the deed so obtained from the plaintiff and put on record was null and void and a cloud on plaintiff's title; that in delivering the deed to Rupper, plaintiff believed and relied on the statement and representation of Rupper that he would place the deed in escrow pursuant to the terms of the agreement, and had the plaintiff not so believed he would not have parted with possession of it.

A general and a special demurrer were interposed to the complaint which were overruled. The defendants answered admitting the contract as alleged in the complaint and attached a copy of it to the answer. In addition to the terms alleged in the complaint, the contract, among other things, provided that the "said Buyer" agreed to pay $12,000 for the described premises, $100 in cash, the receipt of which was acknowledged, and $100 in monthly payments until the full sum of $12,000 was paid, "the said sum of $12,000 to be the total amount to be paid by the buyer, including both interest and principal. Interest shall be charged on all unpaid portions of the purchase price at the rate of eight per cent per annum." It further provided that

"in the event there are any liens or encumbrances against said premises other than those herein provided for or referred to, or in the event any liens or encumbrances other than herein provided for shall hereafter accrue against the same by acts or neglect of the Seller, then the Buyer may, at its option pay and discharge the same and receive credit on the amount then remaining due hereunder in the amount of any such payment or payments and thereafter the payments herein provided to be made, may at the option of the Buyer, be suspended until such time as such suspended payments shall equal any sums advanced as aforesaid."

The contract further provided that the seller, the plaintiff, was to erect on the property an auto service station "at a cost to the seller of $3,000" and upon the payment of the purchase price of $12,000 the defendant corporation was to become the owner of the service station as well as all other improvements on the property.

It was further alleged that the plaintiff had failed to enter into a contract for the construction of the station until January 1, 1930, when he entered into a contract with one Neal Davis, who began the construction of the station; that on January 17, 1930, the plaintiff in part payment for such work gave Davis a check on a bank at Provo for $1,286.90, which check was dishonored and returned, whereupon Davis threatened to discontinue the work; that at a meeting of the board of directors of the defendant corporation at which the plaintiff was present, demand was made of him that he proceed with the construction of the station, but he neglected to do so and failed to pay Davis for the work performed and material furnished by him; that the plaintiff neglected to deposit the deed to the property in escrow with the bank as provided by the contract; that the United States Building & Loan Association, holding a mortgage upon the property, threatened to foreclose it unless the defendants, officers of the defendant corporation, paid the mortgage, which they did; that they also paid Davis to go forward with the construction of the service station in accordance with the contract entered into between him and the plaintiff; that

thereafter the board of directors of the defendant corporation directed Rupper, its president, to obtain the deed to the property from the plaintiff, and at the request of the defendant, the plaintiff voluntarily delivered the deed to Rupper, but with no understanding that it was to be delivered to the bank in escrow but to be recorded as a present conveyance from the plaintiff to the defendant corporation. It was further alleged that plaintiff was insolvent and unable to perform his part of the agreement and because of his failure to erect the service station the defendant corporation was unable to use it until March 15, 1930, to its damage in the sum of $5,000.

Upon these issues the case was tried to the court. There is no controversy or dispute as to the written agreement entered into whereby the plaintiff agreed to sell the described real estate to the defendant corporation for the sum of $12,000, payable in monthly installments as indicated, the plaintiff to execute a warranty deed to the property and deliver it in escrow to be delivered to the corporation when the full purchase price was paid, and the plaintiff to erect a service station on the property at a cost to the plaintiff of $3,000. The court so found and further found, in substance, that the deed was deposited by the plaintiff in escrow as by the agreement provided but shortly thereafter with the consent of the defendant corporation it was returned to the plaintiff; that on February 13, 1930, at the request of the directors of the defendant corporation, Rupper, its president, obtained possession of the deed from the plaintiff upon his representation and promise that he would deposit it with the bank as provided by the agreement; that the plaintiff, relying on such promise and representation and for such purpose, delivered the deed to Rupper, who failed to deposit it in escrow as he had agreed to do but placed it on record and a few days thereafter notified the plaintiff that the deed had been put on record; that on or about March 28, 1930, the defendant corporation executed and re-

corded a warranty deed to the property to its officers and directors, the individual defendants; that the defendants, in pursuance of the written contract, paid the plaintiff, in cash, $100 November 1, $100 in December, 1929, $100 in January, 1930, and sold to the plaintiff an old house on the premises of the value of $200, which was torn down and removed by the plaintiff; that the defendant corporation between February 15, and March 22, 1930, paid to Neal Davis the sum of $2,625, representing the contract price which the plaintiff had agreed to pay Davis for the construction of the service station; that the defendant corporation also paid the Building & Loan Association $3,422.85 in full payment and cancellation of the mortgage; that after the recordation of the deed from the plaintiff to the defendant corporation, the plaintiff demanded the balance due on the purchase price of the property, or a reconveyance of the premises to him, which the defendants refused to do; that the plaintiff had performed all the terms and conditions of the contract upon his part.

Conclusions of law were made and a judgment rendered that the written contract between the plaintiff and the defendant corporation was still in full force and effect; the deed delivered to Rupper and the deed from the corporation to its officers and directors were declared null and void, a warranty deed decreed to be executed by the plaintiff to the defendant corporation which together with the contract to be put in escrow with the bank as by the agreement provided, and upon the full payment of the purchase price the deed to be delivered to the defendant corporation; the defendant corporation given credit on the contract for the payment of $300 in cash and $200 for the old house; for $3,422.85, the amount which the defendant corporation paid the Building & Loan Association in satisfaction and discharge of the mortgage, "the same to be credited on payments on the contract as each payment becomes due in its order without interest;" and credit for the further sum of

$3,000 and interest for the construction of the service station, to be "applied on the $100.00 per month payments as they come due, provided that interest shall be calculated on the balance of such credit after each payment is deducted, and the credits to be applied first in payment of interest and then in reduction of principal; that after the aforesaid credits have been allowed on the contract, the balance due at the rate of $100.00 per month shall be paid by the defendant" corporation to the bank "for the use and benefit of the plaintiff, unless said contract be sooner abrogated by the terms thereof, or by the default of plaintiff, or mutual consent of the parties thereto, or by decree of a competent court having jurisdiction to determine the same"; each party to pay his own costs.

In brief, the court canceled the recorded deeds, required the plaintiff to execute a warranty deed and with the contract to be deposited in escrow as by the contract provided; gave the defendant credit on the contract for $500 paid in cash and the value of the old house, $3,422.85 paid by the defendant in payment and discharge of the mortgage on the premises; and $3,000 for the construction of the service station which the plaintiff had agreed to construct but had failed to do, giving the defendant interest on the $3,000 payment but none on the $3,422.85 payment. The defendants appeal.

They assign as error the overruling of both the general and special demurrers; refusing their motion to grant a nonsuit; error in finding that the plaintiff in the first instance had deposited the warranty deed in escrow and later withdrew it and then delivered it to Rupper to be again deposited in escrow; error in finding that when the defendants paid the mortgage loan it was not yet due; error in refusing to allow the defendants interest on the amount of moneys paid to cancel and discharge the mortgage; and error in canceling the deeds from the plaintiff to the defendant corporation and from the corporation to its officers and directors.

We think both the general and the special demurrer to the complaint were properly overruled. The complaint is in two counts. We think enough is stated in each to constitute a cause of action. The objection chiefly involves the special demurrer on the ground of uncertainty and inconsistency. While the complaint is in two counts, yet in each the substance of the alleged primary right of the plaintiff and the alleged invasion thereof are the same. They both relate to and are connected with the same subject of the action. The main difference relates to the remedial right or relief. That there is a distinction between cause of action and the remedial right or relief is well settled. There may be but one cause of action, yet on the alleged facts the plaintiff may be entitled to several or different reliefs though they may consist of conflicting demands, which often is confounded with inconsistent or mingling of causes of action. What the defendants here characterize as inconsistent causes of action is merely conflicting or different demands for relief arising out of the same alleged primary right and the invasion thereof and relating to or connected with the same subject of the action. In such view we think the complaint not open to the objection on either ground of uncertainty or inconsistency.

Further, the parties without hindrance or prejudice threshed out their respective claims and contentions, irrespective of any uncertainty or inconsistency of the pleadings, and apparently without surprise or misunderstanding of what each claimed and attempted to maintain or defend. Such assignments are thus overruled.

As to the finding that the plaintiff had performed all of the conditions of the contract on his part to be performed, the record shows that the plaintiff paid no part of the construction of the service station. He let a contract to Davis for the construction of it. The contract price therefor, as testified to by the plaintiff, was $2,300, and that the plans and specifications for the construction were submitted to

and approved by the defendant corporation. We do not find that to be disputed. Davis entered upon the construction of the station. As part payment for work done and material furnished, the plaintiff gave him a check for $1,286.90 which was dishonored and returned for want of funds. Davis refused to further proceed unless the check was made good. The plaintiff did not make it good. The defendant corporation was without funds. The individual defendants who were officers and directors of the corporation arranged with the bank to borrow $1,300 on a promissory note signed by the plaintiff and the defendants with which to pay Davis. The note was afterwards paid by the defendants. They further paid Davis additional sums amounting to $1,325, or a total as found by the court of $2,625, "such sum representing the contract price the plaintiff had agreed to pay Davis." That finding is not challenged. The court, however, as to the service station gave the defendant corporation credit on the contract for $3,000 together with interest; that being the cost for which the plaintiff by the contract had agreed to construct the station. The mortgage of the Building & Loan Association including interest was something in excess of $3,400. In March, 1930, the loan association wrote the defendant corporation that there were delinquent payments on the loan and that it would take $786.66 to place the loan in good standing which amount included taxes paid by the loan association, and unless such payments were made and the loan put in good standing, the association would be required to foreclose the mortgage. The mortgage itself was executed in September, 1928, and became due October, 1938, provided the interest payments were kept up. The plaintiff was required to meet such obligation, keep the loan in good standing, and protect the property against the mortgage. Upon his failure to do that the defendant corporation under the terms of the contract between it and the plaintiff could do so and be given credit therefor on the purchase price of the contract. Instead of merely taking care of the delinquent payments, the officers and directors

of the defendant corporation borrowed moneys from the bank to pay not only the delinquent payments but also the whole of the principal of the mortgage including interest, and with such moneys paid off and discharged the mortgage amounting to $3,422.85, for which amount the defendant corporation was given credit on the purchase price of the contract.

No claim is or was made by the defendants of any rescission of the contract between the plaintiff and the defendant corporation because of the failure of the plaintiff to construct the service station, or to take care of the delinquent payments on the loan, and keep it in good standing, nor was there any claim made of damage because of such failures, except in the answer it was alleged that the defendants were damaged in the sum of $5,000 because the service station was not sooner constructed for their use and benefit; but no assignment is made in such particular, nor is any such claim for damage urged or discussed on the appeal, nor is or was there any claim made that because of such defaults on the part of the plaintiff, the contract was abrogated or declared forfeited. What the defendants, the officers and directors of the corporation, in such particular claim, is that inasmuch as they personally became liable for the moneys advanced and paid to Davis for the construction of the service station and for the payment and discharge of the building loan mortgage, they for their protection caused the plaintiff to deed the property to the defendant corporation and by the corporation to them. Clearly what the defendants did in such respect was to safeguard and protect the rights of the defendant corporation in the contract and to protect and subserve the subject-matter of the contract and prevent a loss thereof as against claims or demands of others. The contract, giving the defendant corporation the right to pay off and discharge all liens on the property and to be given credit for the amount so paid on the purchase price of the contract between the

plaintiff and the defendant corporation, gave the corporation no right to abrogate the contract because it discharged such liens, nor did it give the officers and directors of the corporation any such right because they advanced moneys for such purpose.

In that connection may be considered the further assignment as to the finding that the deed by the plaintiff to the defendant corporation and delivered by him to the president of the defendant corporation was to be placed in escrow in accordance with the agreement, and not as a present conveyance of the property to the defendant corporation. The testimony with respect to the purpose of such delivery is in conflict. However, on the record we think the fair preponderance of the evidence supports the finding as made by the trial court. And in the absence of any claim of abrogation, rescission, or forfeiture of the contract, the finding is in harmony with and supported by the attending circumstances of the case. With a purchase price contract of $12,000 for the real estate, with cash payments by the defendant of only $500, $2,625 paid by it for the construction of the service station, $3,422.85 for a discharge of the mortgage, a total of $6,547.85, that the parties considered such payments in full payment of the contract price, and that the plaintiff relinquished all claims and demands for further payments and executed a deed of a present conveyance to the defendant corporation in satisfaction of the contract, is on the record quite unreasonable, especially when it is considered that the deed by the plaintiff to the corporation was delivered to its president only about three months and a half after the purchase contract was entered into, and before the corporation or its directors had paid anything to Davis for the construction of the service station or had paid anything on the building loan mortgage.

Now as to the claim that the court erred in not allowing interest on the $3,422.85 paid to the Building & Loan Association. In the first place, let it be observed that the

contract between the plaintiff and the defendant corporation to sell the described real estate for $12,000 on installments of $100 a month was entered into October 30, 1929; the cash payments of $500 (including the old house) were made October, November, and December, 1929; the $2,625 for the construction of the service station were paid between February 25 and March 25, 1930; the $3,422.85 to the Building & Loan Association on March 22, 1930—all within about five months after the contract between the plaintiff and the defendant corporation was entered into. On February 13, 1930, before any such payments, except the cash payments, were made, Rupper obtained the warranty deed from the plaintiff to the defendant corporation, which on the same day was recorded and by the defendants claimed to be a present conveyance of the property in satisfaction of the purchase price of the contract; and on March 28, 1930, the defendant corporation conveyed the property to its officers and directors and put the deed on record. This action was commenced April 28, 1930, about a month after the deed by the corporation to its directors. It is apparent that the main purpose of the action was to cancel such deeds and re-vest the record title of the property in the plaintiff. Such relief was decreed with the requirement that the plaintiff execute a warranty deed to the property to the defendant corporation, the deed to be put in escrow in accordance with the written contract. While the court found and decreed that the contract was in full force and effect, yet neither by findings nor by the decree did the court undertake to find or decree the amount of the unpaid installments on the contract—the matter was only about three months after the last installment was paid —but gave the defendants credit on the contract for $3,000 on account of the construction of the service station together with interest thereon from March 1, 1930, to be "applied on the $100.00 monthly payments as they come due," and credit for the amount paid the Building & Loan Association "to be credited on payments as each payment becomes due

in its order, without interest." Further than that no adjudication was made. But no complaint is made of that. The trial court apparently took the view that because of the terms of the contract giving the defendant corporation an option to pay off all liens against the property, and if it did so, to have credit for the amount so paid on the contract and as payment of monthly installments equal to the amount paid to discharge such liens, and thus by giving the defendant corporation credit on the contract for what it paid the Building & Loan Association, the defendant corporation was not entitled to interest for the credit payment so given it.

The court took a different view as to the payment for the construction of the service station and allowed interest thereon. That was on the theory that such payment was made "independently of the terms of the contract," that "the contract did not anticipate any such payment" to be made by the defendant corporation, and, further, that such payment "was not made on any lien or encumbrance on the property." Whether the court was justified in such distinction is a question not before us, since no cross-appeal was taken or cross-assignment of error made by the respondent as to such allowance of interest. Treating the payment of the Building & Loan Association as payment on the contract as of the date the loan was paid and as payment on monthly installments of the contract equal to the amount so paid the association, as did the trial court, we think no error was committed in not allowing interest on such payment, for the defendant corporation may not have full credit on the contract as a payment thereon for what it paid the loan association and at the same time have interest on such payment. In other words, the proposition is not unlike one that if the defendants had paid $3,422.85 cash as part payment on the contract and given full credit therefor and then claimed interest on the full amount so paid until the entire obligation is discharged. An obligor is not entitled to interest on partial payments, unless the obligee is entitled to

and given interest on the full amount of the obligation until paid, which here is not the case.

What the defendant corporation, the vendee, agreed to pay for the property was $12,000 at the rate of $100 a month without interest, except on deferred payments when due and remaining unpaid. The statement that the $12,000 agreed to be paid included interest is the same as stating that the defendant corporation agreed to pay $14,000 without interest.

The contract of purchase provided that:

"All payments made by the buyer on this contract in excess of the payments herein stipulated, may, at the option of the buyer, be applied on future payments."

Thereunder the defendant corporation could pay on the contract any amount desired. If it paid an amount in excess of the monthly payments as they matured, the defendant corporation was not entitled to interest on the excess or surplus so paid. The provision of the contract giving it the right to make such excess payments does not so provide. Quite the contrary is implied.

When the contract of purchase was entered into, there was a mortgage on the property held by the loan association. The plaintiff was under legal duty to discharge it. The defendant corporation had not agreed to assume or pay the mortgage as part consideration of the purchase price. The plaintiff defaulted in making payments as by the terms of the mortgage provided, whereupon the loan company threatened foreclosure. The contract of purchase also provided that:

"In the event that there are any liens or encumbrances against said premises other than those herein provided for or referred to, or in the event any liens or encumbrances other than herein provided for shall hereafter accrue against the same by acts or neglect of the Seller, then the Buyer may, at its option pay and discharge the same and receive credit on the amount then remaining due hereunder in

the amount of any such payment or payments and thereafter the payments herein provided to be made, may at the option of the Buyer, be suspended until such time as such suspended payments shall equal any sums advanced as aforesaid."

Thus, it was provided that if the buyer, the defendant corporation, paid and discharged any incumbrance on the property it was to receive credit "in the amount of any such payment or payments" on the amount remaining due on the contract of purchase, and had the option to have suspended the payment of the monthly payments provided by the contract until they equaled what was paid in discharge of the incumbrance. The contract expressly provided that if the defendant corporation paid off and discharged any incumbrance on the property, it was to be given credit on the purchase price of the contract for whatever amount was so paid by it, and so was given credit for such amount as of the date such payment on the mortgage was made and the mortgage discharged. The contract does not provide, nor does it imply, that the buyer also was to be given interest on the amount so paid. When it was given credit for what it had paid, the defendant corporation was given all that the contract of purchase called for.

The court found that the payment was made by the defendant corporation. The evidence shows it in fact was made by the board of directors of the corporation. But no complaint is made of the finding in such particular. The assignment made in such respect is that interest was not allowed on such payment and for which the defendant corporation was given credit, for the reason, as urged, that as the plaintiff neglected to take care of the mortgage, and of the threat of the loan company to foreclose, "the appellants," to protect their right, title, and interest in the property, were required to pay and paid the mortgage. It matters not so much whether the defendant corporation or members of the board of directors paid the mortgage, for it is quite clear that the members of the board advanced and

paid off the mortgage for the use and benefit of the defendant corporation and for its protection. Stockholders and officers of the corporation of course also were protected thereby.

The members of the board were made parties to the cause because it was alleged and by the court found that the property was wrongfully conveyed to them and that the deed of such conveyance should be and was canceled. The answer filed was a joint answer of all of the defendants including the defendant corporation. Neither by allegations of the answer nor by the prayer was it alleged or claimed that either the defendant corporation or the individual defendants were entitled to interest. Nor by the answer was it alleged or claimed that the individual defendants were entitled to be subrogated or sought subrogation to the rights of the loan company. What is alleged in such respect is that the loan company threatened "to foreclose and would have foreclosed its mortgage on said property except for the defendants," naming them, members of the board of directors, "paying said mortgage which they were compelled to do by and on account of the plaintiff failing to live up to his agreement." Nothing more, either as to any claim of interest or subrogation, is alleged. If, in the absence of the provisions of the contract of purchase referred to, the members of the board had paid off the mortgage and the defendant corporation not given credit therefor as by the contract of purchase provided, let it be assumed that upon proper allegations the individual defendants could have been subrogated or were entitled to be subrogated to the rights of the loan company under the mortgage. But such was not the case. Nor do the individual defendants either by pleadings or otherwise seek to be so subrogated. What they say is, they had the right to be so subrogated. But nowhere did they seek it nor do they now claim it. What they claim is, not that they be subrogated to the rights of the loan company, but that they be given interest as against the plaintiff on the $3,422 paid by them to the loan company in pay-

ment of the mortgage. That is, they say they could have been and were entitled to have been subrogated to the rights of the loan company, could have taken an assignment of the mortgage and foreclosed it, etc., but, as they say, "this was not done, but the appellants had the right to do it," and because they did not do so, they now say they should have interest as against the plaintiff on the payment made by them. The contingency of the one is not dependent upon the other.

As between the individual defendants and the defendant corporation, let it be assumed, they might well assert a claim against the defendant corporation for moneys, including interest, advanced or paid for its use and benefit. But that is another question. Because they might be entitled to that, it does not follow that they are entitled to it as against the plaintiff. Since, however, the defendant corporation was given credit on its contract of purchase and as by the terms of such contract provided for the payment of the amount paid on the mortgage, the appellants are not in position to also claim subrogation to the rights of the loan company under the mortgage. The situation in such respect as to the plaintiff is no different than if the individual defendants had paid that much cash to be applied and credited on the purchase contract.

Further, the appellants claiming interest do not indicate the amount thereof, nor the period for which they claim they were entitled to interest. They certainly were not entitled to it on $3,422, the amount paid by them, for and during the life of the contract of purchase, nor were they entitled to it on such amount until the monthly payments of $100 equaled the amount so paid, a period of about two years and seven months, for that the principal each month would be reduced by the $100 monthly payment, and hence the appellants, if entitled to it, could claim interest only on the principal as so reduced each month by $100, which, on the basis of partial payments and until the suspended

monthly payments equaled the principal, would amount to a total interest of not to exceed $360.

But for the reasons stated, we think the appellants were not entitled to interest and that they were given all they were entitled to.

The judgment of the court below is therefore affirmed, with costs to the respondent.

EPHRAIM HANSON and MOFFAT, JJ., concur.

ELIAS HANSEN, Justice (dissenting).

In my opinion the judgment appealed from should be so amended as to give to the personal defendants a first lien upon the property involved in this controversy for the money which they advanced for the construction of the service station and for the payment of the mortgage together with interest thereon from and after the time the same was paid by them. The contract for the sale and purchase of the premises in question was executed by the plaintiff and the defendant corporation. The personal defendants were not parties to that contract. It contains, among others, the following provisions:

"Said buyer hereby agrees to pay for said described premises the sum of Twelve Thousand Dollars ($12,000.00), payable at Knight Trust and Savings Bank, a corporation, or their order, in Provo, Utah, strictly within the following times, to-wit: One Hundred Dollars ($100.00) cash, the receipt of which is hereby acknowledged, and One Hundred Dollars ($100.00) on the fifth day of December, A. D. 1929, and One Hundred Dollars ($100.00) on the fifth day of each and every month thereafter until the full sum of Twelve Thousand Dollars ($12,000.00) to be the total amount to be paid by the buyer, including both interest and principal.

"The seller agrees to pay all paving and curb and gutter taxes upon said property, and the general taxes for the year 1929. Further taxes, including special improvement taxes and general taxes are to be paid by the buyer.

"In the event that there are any liens or encumbrances against said premises other than those herein provided for or referred to, or in

the event any liens or encumbrances other than herein provided for shall hereafter accrue against the same by acts or neglect of the seller, then the buyer may, at its option pay and discharge the same and receive credit on the amount then remaining due hereunder in the amount of any such payment or payments and thereafter the payments herein provided to be made, may at the option of the buyer, be suspended until such time as such suspended payments shall equal any sums advanced as aforesaid.

"It is also understood and agreed by and between the parties hereto that as part of the consideration, to-wit: the sum of Twelve Thousand Dollars ($12,000.00), payable as aforesaid, the seller is to erect upon the property hereinabove described an automobile service station, at a cost to the seller of Three Thousand Dollars ($3,000.00), and that upon the payment of the Twelve Thousand Dollars ($12,000.00) by the buyer, to the seller, as herein specified, said property, service station, and any and all improvements upon said property shall belong to and be the property of the buyer, and the seller shall have no right, title, or interest in or to said property, or improvements thereon.

"It is also understood and agreed that the seller is to begin the construction of said service station at once, and to continue with all possible haste until said service station is completed. The plans and specifications of said service station to be subject to the approval of the buyer, any cost of said service station, exceeding the sum of Three Thousand Dollars ($3,000.00) to be paid by the buyer.

"It is also mutually understood and agreed between the parties hereto that there is now upon said property, a mortgage to the Intermountain Building and Loan Association, a corporation, in the sum of Seven Thousand Dollars ($7,000.00), a copy of which said mortgage is hereto attached and made a part of this agreement, with the understanding that the buyer is to deposit in the Knight Trust and Savings Bank, when the same shall become due, the monthly payments provided for in said mortgage, it being mutually understood and agreed that the said mortgage shall be paid in full not later than nine (9) years from the date of this agreement, and the buyer may pay a sufficient amount of the amount herein agreed to be paid to the seller, to pay off said mortgage within said time, it being understood and agreed, however, that in no event and under no circumstances is the buyer to pay to the seller, or to his mortgagees, a sum exceeding Twelve Thousand Dollars ($12,000.00) payable at the rate of One Hundred Dollars ($100.00) per month, said sum to include both principal and interest."

It is clear that by the provisions of the contract just quoted the defendant corporation obligated itself to pay to the plaintiff for the property a total sum of $12,000 in 120 monthly installments of $100 each. None of the parties to this litigation claim that the contract is susceptible of any other construction or that the contract did not express the intention of the parties thereto. There is a provision in the contract that "interest shall be charged on all unpaid portions of the purchase price at the rate of 8% per annum." Such provision, however, must be limited in its application to payments which are past due; otherwise it would be in direct conflict with other provisions of the contract and would be contrary to the intention of the parties thereto. The evidence shows without conflict the following facts: That the personal defendants were stockholders and directors of the defendant corporation; that the plaintiff entered into a contract with one Neal Davis to construct the service station provided for in the contract; that plaintiff failed to pay Davis for the construction of the service station and the personal defendants were compelled to pay for such construction, otherwise Davis would have placed a lien on the property for the amount of the first installment due on the contract and would have refused to complete the construction of the service station; that at the time the contract was entered into it was anticipated by the parties thereto that plaintiff would be able to borrow from the Intermountain Building & Loan Association the sum of $7,000 payable in installments extending over a period of nine years and secured by a mortgage upon the property covered by the contract. For some reason not appearing in the record, the prospective loan was not secured. When the contract was entered into there was a mortgage on the property covered by the contract in favor of the United States Building & Loan Association of Butte, Mont. A number of installments on that mortgage were in default, and according to the terms of the mortgage the mortgagee was entitled to declare the whole amount of the mortgage due. Under date of March

7, 1930, the United States Building & Loan Association wrote the defendant corporation that:

"In reply to your inquiry of March 5th, we are pleased to advise that the balance due the Association on our mortgage on the Northwest corner of Block 70, Plat 'A', Provo City Survey, at this time is $3414.30. We are not acquainted with any other encumbrances against the property.

"Our mortgage calls for monthly payments of $35.10, but is badly delinquent at this time and a payment of $786.66 would be required to place the loan in good standing. This figure includes taxes advanced by the Association and delinquent installments and interest accrued to date.

"Since we are contemplating immediate foreclosure proceedings on our mortgage, we will appreciate your early advice if you desire to place the loan in good standing or take up the entire balance in order to save additional expense."

Neither the plaintiff nor the defendant corporation were in funds with which to pay the mortgage or the amount past due thereon, or to pay Davis for the construction of the service station. There were past-due taxes and unpaid special improvement taxes upon the property at the time the contract was entered into. Plaintiff was, by the terms of the contract, obligated to pay such taxes but failed to pay the same. The general taxes upon the property amounted to about $54 and the special improvement taxes to about $700. The personal defendants, with their own funds, paid Davis for the construction of the service station and also paid off the mortgage held by the United States Building & Loan Association. They claim that it was necessary for them to advance such money to protect their own interests as well as to protect the interests of the other 500 stockholders of the defendant corporation. In the light of the facts shown by the uncontradicted evidence in this record, there can be no doubt but that such claim was well founded. Under such a state of facts the personal defendants are entitled to be subrogated to the rights of the United States Building

& Loan Association with respect to the mortgage, and to the rights of Davis with respect to the money which plaintiff agreed to pay for the construction of the service station. They are entitled to such rights of subrogation both as to the plaintiff and the defendant corporation. The following quotations taken from Corpus Juris will serve to indicate the law as announced by the adjudicated cases with respect to the doctrine of subrogation under a state of facts such as are presented by this record:

"One who, acting in a representative or fiduciary capacity, incurs and satisfies obligations to the benefit of his principal, is subrogated to the rights of the principal against others primarily liable, and to the rights of the creditor against the principal." 60 C. J. 781, 782.

"A person who, not being a volunteer, but having an interest in property, pays off an encumbrance on the property in order to protect his interest is entitled to be subrogated to the rights and remedies of the person paid." 60 C. J. 786.

"A purchaser of land on which there is an encumbrance is entitled to free the land from such encumbrance by paying off the debt it secures, and, in the absence of previous contract with the debtor or knowledge of other encumbrances, or failure of his title, he is entitled to be subrogated to the rights of the encumbrancer where the payment is made to protect his own interest or to perfect his own title, which right extends to those claiming under him, and to have the encumbrance kept alive and enforced for his benefit. However, in order for the purchaser to be entitled to subrogation, it is essential that he has, by his payments, extinguished the encumbrance or charge on the property purchased, and that his payments, made in good faith, were made either as the result of compulsion, or for the protection of some interest in the property that was threatened or imperiled by the encumbrance or charge paid. * * *" 60 C. J. 789, 790.

In this case the personal defendants had an interest in the property as stockholders of defendant corporation and also as officers of such corporation. That the title to the property was threatened and imperiled by both the claim of Davis for labor performed and material furnished for the construction of the service station, as well as by the United

States Building & Loan Association on account of its mortgage, is not open to doubt. It is equally clear that the payments of the claim of Davis and of the building and loan association were made in good faith, viz., for the purpose of preventing the property being sold to satisfy those claims. As I view this record it is not of controlling importance whether the evidence of the plaintiff or that of the defendants is to be believed with respect to the recordation of the deed from plaintiff to the defendant corporation. Independent of any authority from the plaintiff to the defendants with respect to the recordation of that deed as security for the payment of the money advanced by the personal defendants, such defendants are, under the doctrine of subrogation, entitled to a first lien upon the property involved. By the terms of the contract between plaintiff and defendant corporation, plaintiff obligated himself to pay off the mortgage upon the property as well as pay for the construction of the service station. He failed to perform those obligations. It is apparent that the interest of the plaintiff as well as the interests of the defendant corporation in the property here involved was preserved by the personal defendants paying the cost of the service station and the mortgage. The equitable principles upon which the doctrine of subrogation is founded do not justify penalizing the personal defendants for their actions in paying off these obligations nor permit the plaintiff to be relieved from paying interest upon the money which the personal defendants paid to satisfy those claims. And, likewise, the defendant corporation is not entitled, in the absence of the consent of the personal defendants, to retain for its own use and benefit the money which was advanced by the personal defendants to pay off the mortgage and the cost of constructing the service station. In any event, the judgment appealed from should be so amended as to require plaintiff to pay interest on the money advanced for the satisfaction of the mortgage as well as the money advanced for the construction of the service station, otherwise plaintiff will, in effect, be relieved of pay-

ing interest on the money advanced by the personal defendants for his use or benefit.

FOLLAND, Justice.

I concur with the views expressed in the dissenting opinion of Mr. Justice Elias Hansen.